OPINION
This case is an appeal of a custody determination made by the Clark County Common Pleas Court, Juvenile Section, regarding three minor children, Ashlyn Elliott, Allyson Elliott and Brooke Harrell.
The minors are the natural children of appellant, Steve Elliott, and his deceased wife, Tina Harrell Elliott. Steve, Tina and the children resided together in Jacksonville, Florida until July, 1998 when Tina was killed in a car accident. Following Tina's death, Steve and the children moved to Clark County, Ohio. Steve apparently found himself unable to care for the children, and sought aid from the Clark County Department of Job and Family Services (CCDJFS).
In January, 2000, CCDJFS filed a complaint for temporary custody in which it was alleged that the children were dependent. Dependency was proven at an adjudicatory hearing. Following a dispositional hearing, the children were placed in the temporary custody of the agency pursuant to R.C. 2151.353(A)(2). They were initially placed with a foster family, but were subsequently placed in the home of appellants, Robert Digel and Kerry Digel, who were acquaintances of Steve's family.
In August, 2000, the Digels filed a motion for legal custody of the children. Appellees, Rhonda and Mark Melton also filed a motion seeking permanent custody of the three children. Rhonda Melton and Tina Harrell Elliott were cousins. The Meltons live in Florida in close proximity to other maternal relatives of the children.
A hearing was held in October 2000. Steve, the Digels and the Meltons all appeared and were represented by counsel. Following the hearing, the trial court issued an order in which it granted "legal custody" of the children to the Meltons. Both the Digels and Steve filed notices of appeal, and motions for a stay of judgment. The motions were denied by the trial court. However, this court issued an order granting the requested stay.
Steve raises the following as his sole assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE RESPONDENT, STEPHEN ELLIOTT, WHEN IT HELD HEARINGS THAT SUBSTANTIALLY AFFECTED HIS RIGHT TO THE CUSTODY AND CONTROL OF HIS CHILDREN AND DID NOT APPOINT LEGAL COUNSEL TO REPRESENT HIM.
Steve's argument in support of this assignment of error is two-fold. First, he contends that the record is devoid of evidence indicating that he was ever served with notice of the pendency of the custody action. Second, he claims that "it is clear that there is no record that at any time the Juvenile Court offered him counsel or inquired if he was indigent."
We begin with the issue of service. Although not explicitly argued, it appears that Steve's argument that the record does not contain evidence that he was served with process is made in an attempt to claim that the trial court lacked personal jurisdiction over him.
A court obtains personal jurisdiction over individuals by service of process, or by the individual's voluntary appearance or actions. Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156. Personal jurisdiction may be waived if the issue is not properly raised. Civ.R. 12(B) and (H). In this case, we need not determine whether Elliott was properly served with summons because he failed to raise any objections to the trial court's exercise of personal jurisdiction. Moreover, he voluntarily appeared before the trial court. Therefore, Elliott has waived personal jurisdiction.
We next address Steve's claim that the trial court erred by failing to appoint counsel to represent him. Steve admits that counsel was appointed on September 5, 2000; one month prior to the final hearing. However, he claims that the trial court was required to appoint counsel immediately upon the initiation of the action in the lower court, and that the failure to do so prejudiced him. Steve argues that "it is not being overly idealistic to believe that if [he] had counsel at the earliest stages of the court proceedings, he might have done better adapting to those obstacles life had thrown in his way."
It is, at best, unclear from his argument just what "obstacles" Steve believes he could have overcome had counsel been appointed at an earlier time. It appears that his argument is possibly premised upon the claim that a lawyer could have aided him in his attempts to comply with the terms of the case plan developed by CCDJFS. We note that at the time of the hearing, Steve had failed to obtain a job or suitable housing and had failed to attend parenting classes — all goals listed on the case plan. Steve fails to state how counsel would have aided him in meeting these goals; in fact, he does not even state whether these are the "obstacles" to which he refers.
Steve's claim of prejudice is based upon a broad and conclusory statement which seemingly lacks a concrete basis. From our review of the transcript we find no evidence to indicate that counsel was unprepared or unable to adequately represent Steve's interests at trial; had counsel felt it appropriate, he could have requested a continuance of the hearing. Thus, even were we to find that the trial court erred by failing to appoint counsel at an earlier stage of the proceedings, we conclude that Steve has failed to demonstrate, and we will not presume, that such error was prejudicial.
Accordingly, Steve's assignment of error is overruled.
For their assignment of error, the Digels assert the following:
 THE COURT ABUSED ITS DISCRETION BY REACHING JUDGMENT CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE IN A PURELY ARBITRARY, UNREASONABLE MATTER [SIC].
The Digels contend that the trial court's decision was not supported by the evidence. We begin by noting that the trial court's order is unclear, on its face, as to whether the order granting legal custody to the Meltons was intended to be a temporary, or permanent, award of custody. However, at oral argument, all of the parties conceded that the legal custody granted to the Meltons was of a temporary nature. Therefore, we will construe the order as granting temporary custody.
In this case, the trial court found that awarding temporary custody of the children to the Meltons was in the best interest of the children. The court specifically found that the "children have interacted with and developed a healthy relationship with both the Meltons and the Digels. The court also found that both the Meltons and the Digels were capable of assuming custody of the children. However, the court found that the children's relationship with the Digels had developed solely because of their placement in that home, while the "children have interacted with the Meltons and their extended family in Florida for the majority of their lives until the father relocated to Ohio approximately one year ago."
The Court stated that the relationship between the Meltons and the children was "positive, healthy and beneficial to the wellbeing of the children." The court further found:
 The children know the Meltons, have grown up with the Meltons and their extended family and greatly benefit from the familial love of the Meltons and other maternal relatives in Florida. The children were healthy and happy while living in Florida. Granted their mother is no longer there to provide for them, but her extended family helps regularly with child rearing and child care.
 The Digels are willing to extend their love and concern for the children for the long term. The Digels have even spent considerable time, money and effort trying to convince the Court that their interest in the children is genuine and that they would be the best option for the children at this time. Were it not for fit, willing and loving family, the Court could comfortably assign the children to a life in the loving Digel home. Yet, the support and cohesiveness of the many maternal relatives and the stability of the Meltons helps convince the Court that a Florida home is the best for the girls.
 The Meltons offer the best family, home and opportunity for the girls at this time in their lives. The children have spent a good portion of their lives with a [half]sister in Florida and have many appropriate relatives in and memories of Florida. The girls would be better served by living with the Meltons and regularly interacting with their maternal relatives than they would by placement in the home of unrelated individuals.
When reviewing a manifest weight claim it is well-settled that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. We find that the record supports the findings of the trial court.
Clearly, the trial court was faced with a situation in which custody was sought by two sets of highly qualified people. However, the court determined that the children would be best served by being placed with relatives over non-relatives. This finding is supported by the record. "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller (1988), 37 Ohio St.3d 71, 74. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. Id. Thus, a reviewing court may not reverse a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. Pater v. Pater (1992),63 Ohio St.3d 393, 396. We cannot say that the trial court abused its discretion. Therefore, the Digels' assignment of error is overruled.
Both assignments of error having been overruled, the judgment of the trial court is affirmed.
WOLFF, P.J. and FAIN, J., concur.